**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF NEW JERSEY**

**RICHARD COUGHLIN**
FEDERAL PUBLIC DEFENDER

1002 Broad Street
Newark, New Jersey 07102

**CHESTER M. KELLER**
FIRST ASSISTANT

(973) 645-6347   Telephone
(973) 645-3101   Facsimile

January 11, 2021

Honorable Peter G. Sheridan
United States District Judge
District of New Jersey
Clarkson S Fisher Building & U.S. Courthouse
Trenton, New Jersey 08608

      Re: <u>U.S. v. Richard Scalea</u>
       Dist Ct. No. 18-620
       USM # 71151-050

Dear Judge Sheridan:

  Please accept this letter, in lieu of a more formal motion, as Mr. Scalea's application for Compassionate Release. This letter will serve to supplement Mr. Scalea's pro se submission filed October 5, 2020. Also, attached hereto as the defense exhibit are "SENTRY" record and medical records provided by The Bureau of Prisons hereinafter referred to as the "BOP".

  For decades, the BOP had both unlimited and unreviewable discretion to block the sentencing judge from considering a motion to reduce an inmate's sentence, even where "extraordinary and compelling reasons" warranted such a reduction. 18 USC § 3582(c)(1)(A)(1) Until the First Step Act, if the BOP denied a request for compassionate release, an inmate had no ability to ask the court for help or "compassion" when the circumstances that presented themselves indicated that a reduction in sentence was the only decent and compassionate option. In 2018, however, Congress changed the "compassionate release law" and allowed inmates, and not just the BOP, to petition the Court for release when circumstances warranted a reduction.

  Accordingly, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Richard Scalea respectfully requests that this Court modify his sentence and immediately release him to home confinement and a period of supervised release. Upon release, Mr. Scalea would still be subject to the term of supervised release that was initially imposed at sentencing.

## JURISDICTION

As revised, 18 U.S. C. § 3582(c)(1)(A)(i) provides the sentencing judge with jurisdiction to consider a defendants motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after " the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier" See First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).  On or about August 13, 2020, Mr. Scalea requested Compassionate Release or Reduction in Sentence to the Warden of Fort Dix FCI.  As of October 1, 2020 that motion was still pending with the BOP.  Jurisdiction is properly conferred upon this Court.

## PROCEDURAL HISTORY

Mr. Scalea was arrested on October 5, 2017, for the charge of Distribution of Child Pornography and pled guilty to that charge on October 16, 2018. Mr. Scalea was sentenced to a prison term of 120 months with ten years of supervised release to follow.  According to the BOP, Mr. Scalea is scheduled for release on April 13, 2026.  However, he is scheduled to be released to home confinement on October 13, 2025.

## AUTHORITY UNDER 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13

18 U.S.C. §3582(c)(1)(A)(i) states in relevant part that the Court:

May reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent, they are applicable, if it finds that… extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Pursuant to that authority, the Sentencing Commission defined extraordinary and compelling reasons in U.S.S.G. §1B1.13.  However, the factors in U.S.S.G. § 1B1.13 are only viewed as guidance and do not have the effect of binding law.  See, *Woodard v. United States, \_\_\_F Supp 3d\_\_\_, 2020 WL 3528413* (ED Virg. filed 6-26-20) ("In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G.§ 1B1.13 in evaluating a petitioner's

request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Lisi*, 2020 WL 881994 at 3. (SD NY 2-24-20); *United States v. Fox*, 2019 WL 3046086 at 3 (D. Me 7-11-19).

**MR. SCALEA'S CIRCUMSTANCES WARRANT GRANTING THIS RELEIF.**

Mr. Scalea discusses his medical conditions in his Pro Se motion. He has been diagnosed with asthma, hypertension, and high cholesterol. He has been prescribed Lisinopril for his high blood pressure and Albuterol to control his asthma. (Def. Exh. 104, 112, 119, 127, 138). It is clear that COVID-19 infects the lungs and that individuals who already have respiratory issues will have much greater difficulty recovering from the disease, and may not ever fully recover from its damage to the lungs, even if they survive.

Asthma is a known and established risk factor for COVID-19. Since the pandemic began, it has been widely known that COVID-19 damages the lungs by "inflaming and clogging the tiny air sacs in the lungs, choking off the body's oxygen supply until it shuts down the organs essential for life."[1] Although, like much of what is still unknown about COVID-19, "the data analysis on the effects of asthma is in its infancy," health experts cite "an existing body of research that shows the flu and milder coronaviruses exacerbate asthma."[2] Indeed, "viral infections are the No. 1 cause of asthma flares in both children and adults under normal conditions."[3] Asthma, by definition, is a lung condition in which the airways in the lungs narrow and swell, making it difficult to breathe. The swelling can also produce extra mucus, which can make it even more difficult to obtain an adequate oxygen supply.[4] Dr. Lakiea Wright, a specialist in allergies and immunology, noted, "You can imagine if a virus that causes extra inflammation gets in there, then that's going to be worse . . . Those are the patients who might end up on ventilators to help with breathing because Covid-19 is doing a lot of damage in the lungs."[5] Importantly, Rush Medical Center has recently released a study on young people with asthma who contract COVID-19, concluding that these individuals spend a longer amount of time intubated and on a ventilator, when they otherwise would have seemingly

---

[1] Lenny Bernstein et al., *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts and elsewhere,* Washington Post (Apr. 15, 2020), available at https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html.
[2] Danny Hakim, *Asthma Is Absent Among Top Covid-19 Risk Factors, Early Data Shows,* The New York Times (Apr. 16, 2020), available at https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html.
[3] *Id.*
[4] *Patient Care & Health Information: Diseases & Conditions: Asthma*, Mayo Clinic (May 20, 2020) *available at* https://www.mayoclinic.org/diseases-conditions/asthma/symptoms-causes/syc-20369653.
[5] Sandee LaMotte, *Asthma and Coronavirus: Act Now to Decrease Your Chance of a Serious Outcome*, CNN (April 21, 2020), https://www.cnn.com/2020/04/21/health/asthma-coronavirus-wellness/index.html.

fared well with the disease.[6] Notably, this study *does not differentiate between mild intermittent and moderate to severe asthma*, as the CDC has.[7] And even healthy, young individuals "who suffered from asthma as a child" and whose adult asthma is "managed well with an inhaler" have very nearly died after contracting COVID-19.[8]

Further, post-infection complications in serious COVID-19 cases (such as when a person is intubated and on a ventilator) include acute respiratory distress syndrome ("ARDS"), a potentially life-threatening lung injury,[9] and lung scarring that can cause "permanent damage."[10] Thus, even if Mr. Scalia were to survive COVID-19, his risk of life-long complications from the virus is higher because of his asthma, as it puts him at higher risk of having a serious case and being put on a ventilator, which in turn increases the risk of a lung injury, scarring, and lasting, debilitating effects.[11]

Hypertension, as well, makes a person more vulnerable because "COVID will cause a systemic reaction in the body in a patient that already has risk" because of poor heart health, meaning the virus can attack multiple organ systems.[12] Similarly, as one District Court noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, Crim. No. 18-0215, DE# 84 at *5 (D. Md.

---

6 Michael C. Peters et al., *COVID-19 Related Genes in Sputum Cells in Asthma: Relationship to Demographic Features and Corticosteroids*, available at
https://www.atsjournals.org/doi/abs/10.1164/rccm.202003-0821OC; Rush Medical Center Press Release, *Asthma Associated with Longer Time on Ventilators for Younger COVID-19 Patients*, available at https://www.rush.edu/news/press-releases/asthma-associated-longer-time-ventilators-younger-covid-19-patients (last accessed June 17, 2020).
7 *Id.*
8 *See* David Lat, *I spent six days on a ventilator with covid-19. It saved me, but my life is not the same*. The Washington Post (Apr. 9, 2020), https://www.washingtonpost.com/opinions/2020/04/09/my-near-death-experience-ventilator/ (author noting he used to run marathons but now "can't walk across a room or up a flight of stairs without getting winded" and "can't go around the block… unless" pushed in a wheelchair).
9 *Here's the Damage Coronavirus (COVID-19) Can Do to Your Lungs*, The Cleveland Clinic (Mar. 20, 2020) https://health.clevelandclinic.org/heres-the-damage-coronavirus-covid-19-can-do-to-your-lungs/.
10 Lois Parshley, *The Emerging Long-Term Complications of Covid-19, Explained*, Vox (May 8, 2020) https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms.
11 *See* Lisa Du, *Virus Survivors Could Suffer Severe Health Effects For Years*, Bloomberg News (May 12, 2020). Available online at: https://www.bloomberg.com/news/articles/2020-05-12/covid-19-s-healtheffectscan-last-long-after-virus-is-gone (last accessed May 13, 2020). Recent studies of those who have "recovered" from COVID-19 show that beating the initial sickness may be just the first of many battles for those who have survived. Some recovered patients report breathlessness, fatigue and body pain months after first becoming infected. Small-scale studies conducted in Hong Kong and Wuhan, China show that survivors grapple with poorer functioning in their lungs, heart and liver.
12 *See* R. Prior, *Those With High Blood Pressure Are at a Greater Risk for COVID-19. Here's What You Need to Know to Protect Yourself*, available at https://www.cnn.com/2020/04/17/health/blood-pressure-coronavirus-wellness/index.html.

Apr. 23, 2020) (citing *Coreas v. Bounds*, Crim. No. 20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020). The combination of high blood pressure and asthma is particularly dangerous.

Mr. Scalea is also vulnerable because he is male. For unknown reasons, across the world, COVID-19 kills more men than women.[13] Because of this, Dr. Deborah Birx, the White House's COVID-19 response coordinator has warned, "to all of our men out there, no matter what age group: If you have symptoms, you should be tested and make sure that you are tested."[14] Just like all the other precautionary measures the CDC advises people to take, Mr. Scalea has no control over whether he is tested. He remains at the mercy of the BOP.

U.S.S.G. § 1B1.13 defines some of the "extraordinary and compelling reasons" that can warrant the reduction of a prison sentence. Under U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii), a reduction in sentence is warranted if the defendant is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Mr. Scalea cannot follow the CDC's social distancing and other preventative measures in prison. For this reason, a reduction in sentence is warranted under U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii). *See United States v. Readus*, Crim. No. 16-20827, 2020 WL 2572280, at *2 (E.D. Mich. May 21, 2020) ("A serious physical or medical condition from which a defendant is not expected to recover—in combination with a rapidly transmittable virus that thrives in institutional settings— diminishes a defendant's ability to provide self-care.") (collecting cases); *United States v. Atkinson*, Crim. No. 19-55, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) ("[T]he presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means'" to include COVID-vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission) (quoting and following *United States v. Esparza*, Crim. No. 07-00294, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020)); *United States v. Gorai*, Crim. No. 18-220, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (same).

Although the BOP claims to have been making steps to confront the Covid-19 crisis, it is abundantly clear that jail setting "breeding grounds" for the spread of Covid-19. Once an infection has taken hold, prison conditions create the ideal

---

13 Chris Mooney, Sarah Kaplan, Brady Dennis, *All Across the United States, the Coronavirus is Killing More Men than Women, Data Show*, The Washington Post (Apr. 4, 2020), https://www.washingtonpost.com/health/2020/04/04/coronavirus-men/.
14 Nell Greenfieldboyce, The New Coronavirus Appears To Take A Greater Toll On Men Than On Women, NPR (Apr. 10, 2020) *available at* https://www.npr.org/sections/goatsandsoda/2020/04/10/831883664/the-new-coronavirus-appears-to-take-a-greater-toll-on-men-than-on-women.

environment for its transmission.[15] Crowding, inadequate ventilation, and security issues all contribute to its spread in jails and prisons.[16] Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.[17] Over 40,000 prisoners and 5000 staff at the BOP have been infected as of January 8, 2021.[18] Fort Dix currently has 789 inmates infected and 23 staff infected. As of that date, there had also been 183 prisoner deaths, and three staff deaths.[19] Social distancing is simply not possible in United States prison settings. The BOP's infection rate far exceeds the national average, with those in BOP custody infected at a rate **_42 times higher_** than those outside BOP custody:



And the United States knows these numbers will continue to climb, recognizing in briefing across the country that "despite extensive measures to prevent transmission, more federal inmates will inevitably contract Covid-19 going forward." *See U.S. v. Conner*, 2020 WL 3053368 at *8 (N.D. Iowa, June 8, 2020)

---

15 Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (2007), https://doi.org/10.1086/521910.
16 Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators,'* NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators
17 Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA JOURNAL (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus
18 Federal Bureau of Prisons, www.bop.gov/coronavirus (last visited August 24, 2020) (providing daily tallies of confirmed infections).
19 *See id.*

Removing Mr. Scalea from the petri dish of the custodial setting that is Fort Dix advances the best interest of the BOP.  The less inmates populating Fort Dix, the less opportunity there is for the virus to spread.  Although it appeared in the late spring that the United States had checked the spread of Covid-19, this proved to be wishful thinking as the Covid-19 virus has begun to spread like wildfire once again, working its way from the Sunbelt states back up North. Under these circumstances it makes imminent sense to release Mr. Scalea and allow him to begin his supervision component early.

Consideration of the § 3553 factors favor release. In terms of punishment, When the Court sentenced Mr. Scalea it "did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *United States v. Zukerman*, ___F. Supp. 3d ___ 2020 WL 1659880 (SD NY 4-3-20); *U. S. v. Rodriguez*, F Supp. 3d   2020 WL 1627331 at 12 (ED PA  4-1-20) (finding that the pandemic changes § 3553 punishment analysis).

**CONCLUSION**

It is submitted that Mr. Scalea is an appropriate candidate for compassionate release:

1.  Mr. Scalea has complied with the need to exhaust his administrative remedies within the BOP.  He has filed an administrative request for compassionate release.  That request was denied by the BOP and this application is thus ripe.
2. Extraordinary and compelling reasons warrant a reduction.  Mr. Scalea has several comorbidities that make him more susceptible to the covid-19 virus should he become infected. All parties would benefit by releasing Mr. Scalea to supervised release early.
3. He has a release plan in place to live at the home of his mother and step-father, both deceased:  The address is 216 South 6th Street, Surf City New Jersey.
4. The requested reduction is consistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

      Given these compelling and extraordinary circumstances, Mr. Scalea respectfully asks the Court to modify his sentence and immediately release him to home confinement and a period of supervised release. Mr. Scalea is able to be released to the same residence where he resided during his pretrial supervision, where he can quarantine for the appropriate period of time.

      Thank you for your consideration of this matter

                                    Respectfully,

                                    s/ David A. Holman
                                    David A. Holman
                                    Assistant Federal Public Defender

Cc:  Catherine Murphy, Esq