RECEIVED 5/2/21

Honorable Peter G. Sheridan

MAY 07 2021
AT 8:30
WILLIAM T. WALSH M
CLERK

Dear Judge Sheridan,

Enclosed please find my motion for compassionate release based on hardship for the Covid-19 pandemic. I am filing this motion because of the deplorable conditions here at Ft. Dix. They have deteriorated considerably since I filled my motion in Oct 2020. The food situation has become worse with smaller portions and with the lack of food.

We are still locked down with only a minimal number of outdoor recreation, (weather permitting. This places both an emotional and psycological hardship on myself and all the other inmates We are into our second year of a lockdown and are still experiencing new cases of Covid-19, even in those who have been fully vaccinated.

On tuesday, April 27th, we received a visit from Congressman Andy Kim, one of the many New Jersey representatives from New Jersey who drafted a letter to the BOP and Director Carbajal concerning the spread of the virus through FT. Dix, and the conditions of the inmates and the facility.

Congressman Kim, the warden, and representatives from the regional office of the BOP, along with Director Carbajal and a photographer toured the facility. One building Congressman Kim was extremely interested in was #5742. This building has been condemed because of cracks in the foundation and windows blown out by the gusty winds. These windows were hanging on literally by nails and boards. We walk by this building everyday on the way to the chow hall

— over —

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Richard Scalea,<br>    Plaintiff, | Crim. No.: 3:18-cr-00620 (PGS) |
| v.<br><br>United States of America,<br>    Respondent. | Motion for Compassionate Release<br>Based on Hardship for COVID-19<br>Pandemic under 18 U.S.C. §3582(c)(1)(A) |

I, Richard Scalea, plaintiff in the above stated case, state as follows: Petitioner, Richard Scalea, pro-se, respectfully asks this Court, pursuant to 18 U.S.C. §3582(c)(1)(A), to modify my sentence to "time served" and immediately release me to an extended time of home confinement followed by supervised released based on the hardship I have expereinced being housed at FCI Fort Dix.

We have been in lock down since March, 2020 with very limited access to education or recreation. We are limited to three hours of outside recreation per week (weather permitting). The food situation is in a crisis, not meeting nutritional standards.

We are limited to medical care one day per week. We are locked down in our rooms with up to eleven other inmates, which defeats the purpose of social distancing, It is the same with the TV rooms and common areas. These rooms are very rarely disinfected along with the showers and bathrooms.

I suffer from high blood pressure, asthma, and high cholesteral. Asthma is a known and established risk factor for COVID-19. Since the pandemic began, it has been widely known that COVID-19 damages the lungs by "inflaming and clogging the tiny air sacs in the lungs, choking off the body's oxygen supply until it shuts down the organs essential for life." The swelling can also produce extra mucus, which can make it even more difficult to obtain adequate oxygen supply.

-1-

Since contracting COVID-19, I am suffering from ongoing fatigue, headaches at the base of the skull, difficulty talking and breathing, and brain fog. In a study performed at the university of Zurich, they found that weeks after recovering from COVID-19, some patients still experienced confusion and short-term memory loss and scientists have discovered inflammatory molecules in the liquid surrounding the brain and spinal cord are partly to blame. These findings suggest that anti-inflammatory drugs may improve symptoms. More research is needed to confirm.

When I reported to medical services, they told me there was nothing they could do about the symptoms. I was also told that these symptoms can last for up to a year. So much for medical treatment at FCI Fort Dix. I will be much better served by the medical care outside. My medication for my high blood pressure is a double edge sword. The Lisinopril keeps by blood pressure under control but also affects my lungs and my breathing.

The situation here at FCI Fort Dix was caused by the incompetent actions of the Bureau of Prisons ("BOP") and Warden Ortiz. Warden Ortiz accepted 300 inmates from FCI Elkton, which at the time was the number one facility for COVID-19 infections at the time of the transfer. That one decision led to the dismissal of Warden Ortiz of his position as Warden of FCI Fort Dix and also pushed FCI Fort Dix to the top of the list pertaining to COVID-19 infections.

It is difficult to comprehend that the inmates, that were transferred, all tested negative before the transfer, yet tested positive when they arrived. This could either mean that they were positive when they were transferred and Ortiz did not care, or that the testing at FCI Elkton was flawed.

At the time of this motion, 4/22/21, FCI Fort Dix is in the middle of another wave of COVID-19. The entire West Compound is locked down and

-2-

quarantined that's approximately 900 inmates infected. On the East Compound, building 5711 is in total lockdown again, with at least 15 cases of COVID-19. How can the BOP and staff at FCI Fort Dix say they are protecting the inmates?

Speaking of the staff, there are still some staff members who refuse to wear a mask, even as they threaten us with disciplinary action if we do not wear a mask.

The pandemic and actions of the staff here at FCI Fort Dix has created an enormous hardship for myself and other inmates here at FCI Fort Dix. And the administration's decisions on not granting compassionate release just adds to the hardship.

If the BOP and Warden Ortiz did such an outstanding job when it came to COVID-19 and FCI Fort Dix, then why did Sen. Booker and Melendez, Congressman Kim and other representatives of New Jersey band together and draft a letter to the BOP calling for an immediate investigation concerning the outbreak of COVID-19 and the actions of the staff and the conditions of the facility and inmates at the institution.

The Burlington County Times newspaper published a scathing article late in December 2020 about Warden Ortiz, the conditions here at FCI Fort Dix, and the rampant spread of the virus. In the article, a BOP spokeperson, when asked about the rapid spread of the virus at FCI Fort Dix, stated "we don't know how the virus spread so rapidly throughout the institution." That one statement from a BOP spokesman says that they were lackadaisical and incompetent in the handling and knowledge concerning COVID-19. They were lackadaisical in implementing CDC protocols. The article can be viewed at www.thebct.com.

With the removal of David Ortiz as warden, the BOP is admitting that he

-3-

was incompetent in handling the outbreak here at FCI Fort Dix and his actions were a direct cause for the situation that we are now in at FCI Fort Dix. His actions directly led to the hardship we are all experiencing here at FCI Fort Dix.

In regards to not being able to social distance within FCI Fort Dix, Jack Donson, who worked for the BOP for over 23 years talks about how the BOP has fallen short. "When I came into the system [in the 1980s], we followed policy which mandated single cells at higher rate in the medium and high security facilities by cell square footage. Most facilities were actually designed for single cell occupancy."

The BOP believed that the population spike it experienced in the 1990s would be temporary and the agency would eventually respect the capacity constraints. That simply never happened and overcrowding became the new normal.

The BOP could have also built more prisons to combat the problem, but nobody could imagine them double the number of institutions from what they are today.

Dotson's conclusion is that guidance the BOP is issuing, such as internal memos that are not easily available to the public, should be disseminated as Operational memos in accordance with the BOP Directive Management Manual. "Operating" via "internal memoranda" lacks both transparency and more importantly, accountability.

Council of Prisons Southeast Regional VP Joe Rojas, when asked by Reuters about the state of the BOP during the pandemic, stated "we are in chaos as an agency." That statement says it all about the BOP's inactions during the pandemic.

On April 15th, 2021, BOP director Carbajal was called on to testify in

-4-

front of the Senate Judiciary Committee. It was the latest of the many appearances he was called for. Chairman Richard Durban (D-Illinois) asked Director Carbajal bluntly whether he had been directed to make eligibility for CARES Act home confinement and Compassionate Release as restrictive as possible. Senator Durban said that of the 230 BOP inmate COVID-19 deaths, "these were preventable deaths. It is clear that the BOP has been far too rigid in approving transfers to home confinement and to approve compassionate release. This is part of a broader issue of mismanagement."

Senator Durban also stated that he believed the BOP was not approving transfers to home confinement and opposing compassionate release at too high a rate to reduce prison populations and reduce the spread of COVID-19. He also stated that the lack of staff caused teachers and other non-correctional staff to work as correction officers.

Carbajal stated that prisons were not made for social distancing but rather the opposite. He stated that prisons were made to contain people more closely. Many senators pressed Carbajal on conditions in federal prisons this past year, including inadequate healthcare, improper social distancing measures and failure to implement the CARES Act. Senator Grassley (R-Iowa) said "It seems as though the Justice Department - and within that department the BOP - are implimenting the CARES Act as if they want it to fail. I hope this is not the case, but actions speak louder than words, and the inaction of the Justice Department and the BOP on this paints a very different picture."

Last March, Senator Grassley and Senator Durban, along with a bipartisan group of 12 additional senators, wrote to you," Carbajal, "and to A.G. William Barr, to express concerns about the health and well-being of prison staff and inmates. It didn't take a degree or Dr. Fauci's resume to realize

-5-

that our prisons were particularly vulnerable because of so many people gathered in such a limited space." Were you given orders from above in terms of compassionate release and home confinement, to restrict the number of opportunities to be offered?" Carbajal said that he was given no direction like that and went on to say "any inmate that is eligible under the criteria presented to me by A.G. Barr is on home confinement." What Carbajal failed to mention were details of the internal memos that mandated that priority for persons transfer to home confinement be measured against the time served.

They took testimony from Carbajal about the BOP's website which showed that 25,000 people have been sent to home confinement since March 2020. However, that number was revealed to be a bit disingenuous because the majority of those inmates transferred to home confinement were transferred as part of their sentence. Carbajal admitted that only 4,300 of the total inmates on home confinement are as a result of the CARES Act. This is just one of the many instances where Carbajal supplied misleading information during his many appearances before the Senate Judiciary Committee.

Senator Durban stated "our prison system at the federal level is failing. Failing to fulfill its fundamental purpose; the rehabilitation of incarcerated individuals."

Senator Grassley added "I don't think that a national emergency can be used as a scapegoat. It seems the Justice Department and the BOP have failed in this effort. Even if it isn't so, at some point it becomes perception and perceptions become a reality." The BOP is suffering from a lack of transparency in addressing the pandemic and both the Senate and the House allowed Carbajal to mislead with the manipulation of statistics and policy.

In March 2020, AG William Barr established criteria for who should be released on home confinement or compassionate release. Priority was given to

those who had no violence in their record, had scored the lowest on the prison system risk assessment tool, and no disciplinary infractions in the past year, and had one or more of the factors that the CDC determined made them high-risk for COVID-19.

I fall into every one of the above factors pertaining to home confinement or compassionate release. I have no violence on my record and am a first time offender. I have no disciplinary infractions since I have been incarcerated. My risk assessment score using the BOP's own tool is -12/-5, minimum/minimum for violence and recidivism. And finally I suffer from asthma, high blood pressure, and high cholesterol. All these are considered comorbities determined by the CDC.

There have been precedents set for home confinement or compassionate release for sex offenders because of the pandemic.

In United States v. Ryan Heath Telson, (16-80178-CR-middlebrooks). Mr. Telson, a sex offender, suffering from hypertension and depression, argued that his risk has been increased with the inmates being locked down, eating poorly, and suffering from increased stress levels. Risk is further increased under the circumstances of a poor diet due to the food situation at FCI Coleman. These are the same conditions causing the hardship I am experiencing because of the pandemic at FCI Fort Dix, and I have the same medical conditions that Mr. Telson suffers from.

In granting Mr. Telson compassionate release, Judge Donald Middlebrook ruled that extraordinary and compelling reasons exist given defendant's hypertension, coupled with the unprecedented nature of COVID-19, and its spread within correctional facilities.

"Due to conditions under which inmates lives, they are at extreme risk of infection once COVID-19 breaches prison walls. Social distancing is

-7-

difficult, sometimes impossible. Asymptomatic transmission presents additional complications in controlling the spread. Defendant is at an even high risk of a bad outcome because of his hypertension. Research has indicated that people with hypertension and asthma who contract the virus may suffer adverse outcomes as lung injury or mortality. Given the link between hypertension and worse outcomes from COVID-19, defendant's continued incarceration places him at greater risk." Judge Donald Middlebrook. 11/21/2020

United States v. Simon, 18-CR-390-15

Judge Paul Engelmayer ruled in granting Mr. Simon a compassionate release stated "The COVID-19 pandemic is indeed an extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to society. And the crowded nature of jails and prisons present an outside risk that a COVID-19 contagion, once it gains entry, will spread. Recognizing that the realities of life as an inmate present added challenges for a heightened-risk inmate who contracts the virus to care for himself, the Courts have ordered compassionate release to home confinement."

United States v. Tracy Robinson (3:10-CR-261) Judge M Hanaah Lauck

In granting Mr. Robinson compassionate release, Judge M Hanaah Lauck ruled that there are extraordinary and compelling reasons for a compassionate release based on his hypertension and the deplorable conditions at FCI Fort Dix.

These are just a few rulings which state that the pandemic is an extraordinary and compelling reason in conjunction with the inmates medical history, for granting home confinement or compassionate release.

I would like to add a few opinions; two by noted psychiatrists and one

-8-

from a very prominent lawyer.

Psychiatrist Jerome Endress states "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses." Not in these subjects without prior convictions. (See Jerome Endress Et. Al., the Consumption of Internet Child & Violent Sex Offending. 9-B-MC-Psychiatry 43 (2009))

Richard Wallert, PhD, states "vast majority of these offenders," referring to first time child pornography defendants, "do not go on to molest children." Written testimony to the U.S. Sentencing Commission. Available at http://www.ussc.gov/legislative_and_public_affairs/public_hearings_and_meetings/20120216-16/testimony_15_wollert_2.pdf last accessed Apr. 20, 2021.

And prominent attorney Allan Ellis website states "There is no evidence to suggest that the volume of images possessed increases the risk to the community. The number of images simply is not an accurate reflection of the seriousness of conduct."

I fully believe that I have submitted a very compelling argument for my petition for compassionate release based on the hardship of being incarcerated here at FCI Fort Dix. I have submitted sufficient case law, where respected judges nation wide (and some specifically mentioning FCI Fort Dix) have ruled in favor of defendants petitions (even sex offenders) for compassionate release. Their rulings were based on the pandemic creating an extraordinary and compelling reasons in conjunction with the defendant's medical history, and the conditions of the facilities within the BOP.

I have argued with facts that my medical condition in conjunction with the pandemic and the conditions here at FCI Fort Dix, and the way the administration handled the outbreak warrant a compassionate release for hardship.

-9-

I have included testimony from director Carbajal in front of the Senate judiciary Committee, where in his own words, he stated that prisons were not made for social distancing. In fact, he states the opposite, they were constructed to keep inmates in close quarters.

I have included a quote from a senior member of the BOP who states "we are in chaos as an agency" when he was asked about the pandemic by Reuters news outlet.

I have also supplied the Court with opinions from two psychiatrists and Allan Ellis a very prominent attorney very familiar with the federal court system.

I have submitted to the Court evidence of the extremely low potential for violence and recidivism as evident by my PATTERN score calculation sheet with minimum across the board, my mental health sessions with one on one with Dr. Bell and my group sessions.

Finally I argued that my ongoing symptoms from contracting COVID-19 and being incarcerated in this cesspool known as FCI Fort Dix is hazardous to my health: physically, emotionally, and psychologically. My asthma is exasperated by the conditions at FCI Fort Dix. I have trouble breathing when I go to pick up my meals from the housing unit to the chow hall. When I report my complaints to the medical services, they tell me to use my rescue inhaler more frequently. Those rescue inhalers are not to be used as an every day medication for asthma.

When I agreed to the plea deal, I did not agree for it to be a death sentence. I believe the longer I stay here, the more I inhumanly suffer and risk premature death.

I am asking the Court to grant my compassionate release based on hardship to time served. And return there are no terms of any magnitude that

-10-

I won't agree to. For example. Your Honor, if you grant me time served now, I would be more than willing to serve the approximate four years less of incarceration as additional time of my supervised release, and would do so on a monitoring bracelet.

I am a hard worker and when I was on the street, I had a fantastic employment record and I am eager to employ the skills I used in prison, in a new job.

I am eager to continue my therapy, if I am granted a compassionate release. I look forward to proper treatment, which I do not receive at FCI Fort Dix. I look forward to becoming a law-abiding, well adjusted, productive member of society.

My last request is for my public defender, Mr. Holman, to assist me with this motion.

Respectfully Submitted

Richard Scalea

-11-

Scara
71151-050
PO Box 2000
Joint Base MDL
New Jersey 08640

THE day before Congressman Kim's visit, the staff went out and bought plywood to cover up the windows, along with painting the Chow Hall beams and changing the blown out lightbulbs that needed replacing for the past 2 years. They also placed stickers on the floor of the chow hall to remind everyone of the 6 foot distance rule. It was also the first day since the pandemic started that every staff member wore his/her mask.

As a result of Andy Kim's visit, the very next day we woke up to find yellow caution tape all around the walkways of building #5742, to prevent us the walking near it. It took this visit to have the staff worry about our safety. FT. Dix is also under investigation by the OIG. About conditions at the Facility.

I pray that Your Honor takes in the facts that I presented to the court in my motion, along with the ongoing pandemic into consideration when you make your ruling.

Respectfully,

Richard Sealey

Richard Sealey
Reg# 71151-050
PO Box 2000
Joint Base MDL
New Jersey, 08640